UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF LOUISIANA
SHREVEPORT DIVISION

RONNIE K. HONGO                                          CIVIL ACTION NO. 16-cv-0324

VERSUS                                                          CHIEF JUDGE HICKS

JERRY GOODWIN, ET AL                                 MAGISTRATE JUDGE HORNSBY

### REPORT AND RECOMMENDATION

**Introduction**

Ronnie Hongo ("Plaintiff") is a self-represented prisoner who was housed at the David Wade Correctional Center. He filed this civil rights action against several prison officials based on allegations of excessive force, failure to intervene, and denial of proper medical care. Some defendants were dismissed earlier in the proceedings. Before the court is a Motion for Summary Judgment (Doc. 47, supplemented at Doc. 53) by all remaining defendants. For the reasons that follow, it is recommended that the motion be granted.

**The Allegations**

Plaintiff alleges in his complaint, as amended, that he was involved in an "aggravated fight" on August 17, 2015. That incident resulted in the other prisoner, Cory Leone, filing a civil rights action against prison officials and Plaintiff. Leone v. Goodwin, 16-cv-1178. Leone alleged in his suit that Plaintiff used a belt with two padlocks attached to seriously beat Leone, who was asleep in his bunk. Leone allegedly suffered life-threatening injuries and required treatment including surgical placement of a steel plate in his skull and a month or more of hospitalization.

Plaintiff alleges that he never resisted the officers who came to stop his attack on Leone, but Sgt. Holyfield pushed Plaintiff on the bed. Warden Arnold allegedly told Captain Kimball to kill Plaintiff, and Kimball then slammed Plaintiff's head on a door and broke Plaintiff's left hand. Plaintiff accuses Kimball of tightening Plaintiff's handcuffs and kicking Plaintiff in the neck. He claims Warden Goodwin grabbed him by the head and started to slam it against the wall. Plaintiff alleges that he was taken to the infirmary, where he told Nurse Poole that Captain Kimball broke his hand, kicked him in the neck, and hit him in the face, but Nurse Poole refused to provide treatment. Plaintiff prays for several million dollars in compensatory and punitive damages.

**Summary Judgment**

Summary judgment is appropriate "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. Pro. 56(a). A fact is "material" if it might affect the outcome of the suit under governing law. Anderson v. Liberty Lobby, Inc., 106 S.Ct. 2505, 2510 (1986). A dispute is "genuine" if there is sufficient evidence so that a reasonable jury could return a verdict for either party. Anderson, supra; Hamilton v. Segue Software Inc., 232 F.3d 473, 477 (5th Cir. 2000).

The party seeking summary judgment has the initial responsibility of informing the court of the basis for its motion, and identifying those parts of the record that it believes demonstrate the absence of a genuine dispute of material fact. Celotex Corp. v. Catrett, 106 S.Ct. 2548 (1986). If the moving party carries his initial burden, the burden then falls

upon the nonmoving party to demonstrate the existence of a genuine dispute of a material fact.  Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 106 S.Ct. 1348, 1355-56 (1986).

**The Summary Judgment Evidence**

Defendants submit several affidavits in support of their motion.  Lt. Col. Scott Cottrell testifies that he performed an investigation of Plaintiff's attack on inmate Leone.  He watched a security recording that showed Plaintiff enter a dormitory, go to his bed, and fashion a weapon from his belt and two combination locks.  Plaintiff put on a pair of gloves, briefly spoke to another inmate, and then used the weapon to strike Leone in the head as Leone was lying in bed.  Plaintiff struck Leone multiple times and appeared to be swinging the weapon again when Sgt. Holyfield intervened.[1]  Additional officers soon arrived to assist Sgt. Holyfield, and Captain Kimball escorted Plaintiff from the building.  Medical personnel soon arrived to begin life-saving measures on inmate Leone.

Cottrell submits photographs of the weapon, which shows the locks covered in blood.  Cottrell said he attempted to interview Plaintiff, but Plaintiff was uncooperative and refused to talk.  Col. Chris Evans testifies in an affidavit that he was able to question Plaintiff, who complained that on the day before the attack Leone claimed that Plaintiff "was a whore at Angola."  Another prisoner came to Plaintiff and asked him not to mess with Leone, and Plaintiff argued with that prisoner.  Plaintiff said he later heard that Leone and two of his friends had shanks, so he watched Leone all day for an opportunity to attack him.  He decided to attack while Leone was sleeping.  Plaintiff said he did so because he

---

[1] It was not clear from the complaint whether Holyfield was named as a defendant.  Plaintiff did not submit service papers for him, so Holyfield was dismissed from the case.  Doc. 23.

wanted to punish Leone for disrespecting him, and he expressed no remorse for the life-threatening injuries he caused to Leone.

Lt. Col. Cottrell testifies, apparently based on his review of the security recordings, that Sgt. Holyfield gave Plaintiff several orders to stop attacking Leone. Plaintiff did not comply. Plaintiff had to be physically stopped from striking Leone, and he continued to resist until other officers arrived to assist.

Defendants submit affidavits from Captain Ryan Kimball, Master Sgt. Jeffery McAdams, and Lt. Alma Burns, all of whom were personally involved in subduing Plaintiff. Kimball testifies that he saw Sgt. Holyfield holding Plaintiff's left arm and pressing his body down on the bed. Sgt. McAdams and Sgt. Cody Nail arrived and assisted with restraining Plaintiff, who was resisting. Plaintiff, still armed with the weapon, attempted to get up from the bed and was saying things like, "Get the f*** off me" and "Who's the ho now?" Kimball testifies that he grabbed Plaintiff's left arm and assisted Lt. Burns in placing handcuffs on Plaintiff. He says the least amount of force necessary was used to gain control of Plaintiff, who did not follow any orders until he was handcuffed, and who continued to be combative afterward. Sgt. McAdams and Lt. Burns provide corroborating testimony in their affidavits.

Plaintiff alleges that Shanice Morgan failed to protect him. Morgan testifies in her affidavit that she became involved in the incident when she entered Col. Evans' office and saw Plaintiff. She testifies that she was asked to watch Plaintiff while staff checked on Leone, and she did so for about 15 minutes. Morgan testifies that she did not see any injuries to Plaintiff during that time, but Plaintiff did appear "aggravated and frowned up."

Morgan states that she never saw Warden Goodwin, Captain Kimball, or anyone else use excessive force on Plaintiff. Morgan was relieved of her watch assignment so that she could open the gate for an ambulance that arrived for Leone.

Plaintiff alleges that Nurse Tammy Poole refused to provide medical care for injuries he sustained in the incident. Poole testifies in an affidavit that she has been employed as a registered nurse at the prison for several years. She denies that she refused to give Plaintiff medical treatment. Plaintiff was brought to her for medical examination after the incident and prior to Plaintiff being placed in administrative segregation.

Nurse Poole testifies that Plaintiff complained of a broken finger and being kicked in the neck (center) and right side of his face. Plaintiff refused to cooperate with her examination, but she was able to see some edema and bruising to the ring finger on his left hand. She saw no edema, redness, or bruising to the side of his face or center of his neck. Plaintiff refused to move his fingers and hands during the examination.

Col. Cottrell attaches photographs of Plaintiff that were taken after he was seen by medical staff but before he was placed in administrative segregation. The color photographs are of the left and right profile of Plaintiff's face, plus two photographs of his face taken from the front. None of the photographs reflect bleeding, obvious swelling, or other signs of injury.

Dr. Jeffrey Fuller (who is not a defendant) testifies by affidavit that he was employed as a physician at the prison at the time of the incident. Plaintiff placed a routine sick call on the day after the incident with complaints of "hand, neck and left side of face."

Dr. Fuller performed an examination, ordered pain medications, and ordered X-rays at the next available radiology visit.

An X-ray of Plaintiff's hand and cervical spine were performed two days later. Dr. Fuller was advised that the X-rays indicated that Plaintiff had a finger fracture. Fuller ordered the broken finger to be "buddy-taped" to the adjacent finger. The finger was checked by medical staff each day for more than three weeks to ensure that circulation was good and that the tape, often removed by Plaintiff, was in place.

Plaintiff was seen at an orthopedic clinic on August 28, 2015, and he was not wearing his splint as directed. Nonetheless, by September 18, 2015, an X-ray at an orthopedic follow-up showed routine healing with no further need for orthopedic treatment. Plaintiff was also evaluated at the ophthalmology clinic during this time, and he was treated by Dr. Fuller or other prison medical staff for further complaints of neck pain and the like. Dr. Fuller testified that Plaintiff complained neck pain had been present since the August 17, 2015 altercation. Fuller observed that Plaintiff moved his head freely until time for an examination, when he would move slowly during range of motion testing. Dr. Fuller did not see any need for further X-rays or specialty referrals.

**Excessive Force Claims**

Plaintiff alleges that he was subjected to excessive force during or after the time prison officials stopped his attack on Leone. Whether an Eighth Amendment excessive force claim has been made out depends on whether the "force was applied in a good faith effort to maintain or restore discipline, or maliciously and sadistically to cause harm." Hudson v. McMillian, 112 S.Ct. 995 (1992). The factors to be looked to include (1) the

extent of the injury suffered, (2) the need for the application of force, (3) the relationship between the need and the amount of force used, (4) the threat reasonably perceived by the responsible official, and (5) any efforts made to temper the severity of a forceful response. Gomez v. Chandler, 163 F.3d 921, 923 (5th Cir. 1999).

Plaintiff alleges that some of the defendants should have intervened to stop the officers who applied excessive force. Bystander liability of an officer may be established where he "(1) knows that a fellow officer is violating an individual's constitutional rights; (2) has a reasonable opportunity to prevent the harm; and (3) chooses not to act." Kitchen v. Dallas County, 759 F.3d 468, 480 (5th Cir. 2014). But bystander liability can arise only where the plaintiff can prove another officer used excessive force. Id. at 481.

The summary judgment evidence presented by Defendants satisfied their initial responsibility of informing the court of the basis for their motion. Defendants presented specific testimony that described the incident at issue without depiction of any excessive force that would be recognized as a violation of the Eighth Amendment. The force used, as Defendants described the incident, was applied in a good-faith effort to maintain or restore discipline following a violent attack by Plaintiff on a sleeping inmate. Plaintiff may have suffered a broken finger, but that is understandable and not unreasonable given the need to quickly stop his potentially murderous attack on Leone and his continued resistance as a number of officers tried to get him under control.

The burden then shifted to Plaintiff to demonstrate the existence of a genuine dispute of a material fact. Defendants' affidavits were not signed when they filed their original motion for summary judgment, and counsel promised to supplement when signatures were

obtained. Plaintiff filed a response (Doc. 54) that generally challenged Defendants' depiction of the events and stated, "Plaintiff will attack the affidavits once they are under oath and can perjury theirselves." After Defendants supplemented their motion with affidavits signed under oath before a notary, Plaintiff filed another response (Doc. 58) and stated, "The affidavits will be argued at a judge and jury trial." Plaintiff did not submit any competent summary judgment evidence with either response. Accordingly, Plaintiff has not demonstrated a genuine dispute of material fact with respect to the claims of excessive force. All Defendants are entitled to summary judgment on the claims of excessive force or failure to intervene.

**Denial of Medical Care**

For a convicted prisoner to prevail on a claim that his medical care (or lack of care) violated the Constitution, he must prove that prison officials were "deliberately indifferent" to his "serious medical needs." Estelle v. Gamble, 97 S.Ct. 285, 291 (1976). Deliberate indifference encompasses only unnecessary and wanton infliction of pain repugnant to the conscience of mankind. Estelle, 97 S.Ct. at 291-92. Refusing to treat a prisoner's complaints or delay in treatment can make out a claim of deliberate indifference. Galvan v. Calhoun County, __ Fed. Appx. __, 2018 WL 832924, *3 (5th Cir. 2018). But mere disagreement with the diagnostic measures or methods of treatment afforded by prison officials does not state a constitutional claim for indifference to medical needs. Norton v. Dimazana, 122 F.3d 286, 292 (5th Cir. 1997).

Nurse Tammy Poole is the only defendant accused denial of medical care. Her affidavit sets forth specific testimony that she attempted to examine Plaintiff, but he was

uncooperative. She nonetheless reported the findings that she was able to make from visual observation. Plaintiff treated the next day by Dr. Fuller for his broken finger and other complaints.[2] Those facts do not allow a finding that Poole was deliberately indifferent to a serious medical need. Plaintiff has presented no competing summary judgment evidence, so there is no genuine dispute of material fact with regard to the medical claim against Nurse Poole or any other defendant. Defendants are entitled to summary judgment on this claim.

Accordingly,

**IT IS RECOMMENDED** that Defendants' **Motion for Summary Judgment (Doc. 47, supplemented at Doc. 53)** be **granted**, and that all claims against all remaining Defendants be **dismissed with prejudice**.

## Objections

Under the provisions of 28 U.S.C. § 636(b)(1)(C) and Fed. R. Civ. P. 72(b), parties aggrieved by this recommendation have fourteen (14) days from service of this report and recommendation to file specific, written objections with the Clerk of Court, unless an extension of time is granted under Fed. R. Civ. P. 6(b). A party may respond to another party's objections within fourteen (14) days after being served with a copy thereof. Counsel are directed to furnish a courtesy copy of any objections or responses to the District Judge at the time of filing.

---

[2] Several courts have held that a mere broken finger does not rise to the level of a serious medical need that triggers constitutional protection. Russell v. Slay, 2016 WL 4194206, *4 (W.D. La. 2016) (collecting cases).

A party's failure to file written objections to the proposed findings, conclusions and recommendation set forth above, within 14 days after being served with a copy, shall bar that party, except upon grounds of plain error, from attacking on appeal the unobjected-to proposed factual findings and legal conclusions accepted by the district court. See Douglass v. U.S.A.A., 79 F.3d 1415 (5th Cir. 1996) (en banc).

THUS DONE AND SIGNED in Shreveport, Louisiana, this 28th day of March, 2018.

_____
Mark L. Hornsby
U.S. Magistrate Judge